# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MATTHEW RICHARD PARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-CV-0134-CVE-TLW |
| ) | |
| THE CITY OF TULSA, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court is Defendant City of Tulsa's Motion for Summary Judgment and Brief in Support (Dkt. # 88). Plaintiff alleges that defendant violated his Fourteenth Amendment right to due process in violation of 42 U.S.C. § 1983. Defendant asks the Court to grant summary judgment in its favor, arguing that plaintiff has failed to show that his constitutional rights were violated, and, even if plaintiff suffered a constitutional deprivation, that plaintiff has failed to show it was pursuant to a custom or policy of defendant. Plaintiff responds that he has presented evidence sufficient to sustain his § 1983 claim. Dkt. # 94, at 27-33.

## I.

On March 6, 1997, plaintiff was convicted in the District Court of Tulsa County, Oklahoma of sexually abusing K.S., a minor child. On March 21, 2014, the Court of Criminal Appeals of the State of Oklahoma reversed plaintiff's conviction due to ineffective assistance of trial counsel. Dkt. # 88-22, at 9-10. Plaintiff subsequently brought this suit under § 1983, alleging that the Tulsa Police Department (TPD), a department of defendant, violated his Fourteenth Amendment right to due process by conducting a "results oriented investigation" that failed to investigate leads that would

have resulted in exculpatory evidence. Dkt. # 2, at 7. Defendant now moves for summary judgment, arguing that plaintiff has not presented evidence that his constitutional rights were violated pursuant to a custom or policy of defendant. Dkt. # 88, at 24.

**II.**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Id. at 327 (quoting Fed. R. Civ. P. 1).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether

2

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." Id. at 251-52. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007). When the defendant is a municipal entity, the "under color of state law" element requires that the constitutional deprivation occurred pursuant to official policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Defendant argues that it is entitled to summary judgment because plaintiff has failed to establish either a constitutional violation or a custom or policy that caused the constitutional violation. The Court need not address whether plaintiff suffered a constitutional deprivation because plaintiff has failed to establish a custom or policy. Thus, for the purpose of this decision, the Court will assume that TPD's investigation violated plaintiff's constitutional right to due process.

"A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 770 (10th Cir. 2013). Plaintiff alleges that

3

defendant had a well-settled custom of ignoring exculpatory evidence and that defendant failed to train and/or supervise its officers. Dkt. # 94, at 31. The Court will address each allegation in turn.

**A.**

A widespread practice that is not officially authorized may constitute a custom if it is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)). Plaintiff alleges that defendant had a pervasive, informal custom of "results oriented investigations" that ignored exculpatory evidence. Dkt. # 94, at 31. To support his claim, plaintiff relies on the deposition testimony of Rex Berry, the TPD officer who investigated his case. Berry testified that he did not follow up on several lines of investigation that could have lead to exculpatory evidence. Dkt. # 94-6, at 38-39, 56, 63. Berry also stated that he conducted the investigation pursuant to TPD's policies and procedures, and that no supervisor ever objected to Berry's conduct in this investigation. Id. at 7-10.

In Bryson v. City of Okla. City, 627 F.3d 784 (10th Cir. 2010), the Tenth Circuit addressed issues of municipal liability similar to those in this case. Bryson was convicted of a rape and kidnapping based in part on the testimony of a forensic chemist employed by the Oklahoma City Police Department who testified that DNA evidence found at the scene of the crime implicated Bryson. Id. at 787. Later testing found that the forensic chemist's lab results indicated that the DNA found at the scene could not have come from Bryson. Id. Bryson filed a § 1983 action against the city and the forensic chemist, and the district court granted the city's motion for summary judgment, finding that the undisputed evidence did not support a finding of municipal liability. Id. Bryson argued, inter alia, that the city had a custom of encouraging forensic chemists to manipulate

4

evidence in order to obtain convictions. Id. at 790. To support his claim, Bryson cited to the testimony of a former Oklahoma City police chief that "forensic chemists, like everybody who is on the prosecution team, [will] testif[y] in a way that is the most incriminating." Id. (alterations in original). Bryson also cited to the statement of another forensic chemist who criticized the testimony of the chemist involved in Bryson's case and asserted that her behavior "persists and is condoned by much of the criminal justice system in Oklahoma County." Id. The Tenth Circuit affirmed, finding that the statements were not "sufficient to give rise to an inference of a widespread City practice of fabricating results and concealing evidence that was 'so permanent and well settled as to constitute a custom or usage with the force of law.'" Id. at 791 (quoting Praprotnik, 485 U.S. at 127).

Here, plaintiff has presented even less evidence of a custom than the plaintiff in Bryson. Plaintiff relies entirely on the statements of Berry that he was following TPD's policies and procedures in this investigation and that no supervisor reprimanded him over this case. In Bryson, the Tenth Circuit explained that the other chemist's statement about the false testimony being condoned by the rest of the criminal justice system did not establish a custom because the statement referred to only that forensic chemist and did not suggest that other chemists were giving similarly inaccurate testimony. Id. Thus, under Bryson, a clear pattern of behavior of one employee is not enough to establish a custom. Here, at most the evidence shows that TPD condoned Berry's failure to investigate exculpatory evidence in this case. Berry's testimony does not even establish a custom within his own investigations, let alone a widespread practice across TPD that could constitute a well settled custom with the force of law. Thus, viewing the evidence in the light most favorable to

5

plaintiff, plaintiff has failed to present evidence giving rise to an inference of a custom of ignoring exculpatory evidence sufficient to establish municipal liability.

**B.**

A city's failure to train or failure to supervise its employees constitutes an official policy or custom when it "amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). The Tenth Circuit has described the requirement of deliberate indifference as follows:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

Bryson, 627 F.3d at 789 (quoting Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998)). To support his failure to train/supervise claim, plaintiff relies on the expert report of Michael Lyman, Ph. D.[1] Dr. Lyman asserts that "[t]he investigative missteps and oversights [in plaintiff's criminal

---

[1] Defendant has filed a motion in limine (Dkt. # 103), which asks the Court, inter alia, to preclude Dr. Lyman from testifying about certain medical opinions asserted his report. Dkt. # 103, at 17-18. The Court need not address defendant's motion at this time because Dr. Lyman's medical opinions are irrelevant to the issue of municipal liability, and, therefore, have no impact on this decision. Additionally, in its reply brief, defendant asks the Court to not consider any of Dr. Lyman's report in deciding its motion for summary judgment because it is inadmissible hearsay. Dkt. # 96, at 4-5. "Under Rule 56(e), the court may exclude consideration of unsworn expert reports." Hildebrand v. Sunbeam Prods., Inc., 396 F. Supp. 2d 1241, 1250 (D. Kan. 2005). For the purpose of this decision, the Court will consider Dr. Lyman's report. However, as discussed below, even with the consideration of Dr. Lyman's report, plaintiff has failed to present sufficient evidence to support municipal liability on plaintiff's failure to train and/or supervise claim.

case] should have been detected by proper supervisory oversight. Nowhere in the case record is there any indication that [Berry's] investigative progress was being monitored by any supervisor within [TPD]." Dkt. # 94-14, at 19. Dr. Lyman also asserts that a failure to train is evidenced by TPD's lack of a written policy providing guidelines for detectives in child abuse investigations. According to Dr. Lyman, a proper policy would include:

> (1) a requirement to video tape every interview with child victims [and the creation of a written transcript] and that multiple interviews of the same child victim should be avoided; (2) requirements that questions asked of children victims be structured with open ended questions that do not suggest the answer to the question; (3) requirements that investigators investigate and document any and all evidence of an exculpatory nature that might discredit or otherwise refute allegations made by the victim [including evidence of prior false or unfounded allegations of sexual abuse]; and (4) requirements that every step of an investigation of child abuse allegations are involved, supervisory oversight take place to oversee that investigative steps are being properly followed . . . .

Id. at 19-20 (brackets in original).

Plaintiff has presented no evidence to show a pattern of tortious conduct. Thus, plaintiff must show that the need for more or different training and/or supervision was so obvious that a violation of his constitutional right to due process was likely to result from not providing it. See Schneider, 717 F.3d at 773-74. At the time of the investigation, Berry had been a police officer for over twenty years and the second in command of the Child Crisis Unit for over a decade. Dkt. # 94-6, at 5-6. Berry supervised other investigations in the unit and had investigated over one thousand child abuse cases by the time he conducted the investigation that led to plaintiff's arrest and prosecution. Id. at 5; Dkt. # 88-5, at 1. Berry's uncontroverted testimony is that he trained with a detective experienced in child abuse cases when he first joined the unit and that TPD sent him to several training seminars in investigating child abuse cases. Dkt. # 94-6, at 90-91.

Dr. Lyman's report asserts that "[t]he importance of proper supervisory oversight cannot be overstated," but it does not explain what "proper supervision" would have involved. Dr. Lyman's report gives no reason why it would be obvious to TPD that additional oversight of a veteran detective in the Child Crisis Unit would be obviously necessary to prevent the detective from failing to investigate exculpatory evidence. Given Berry's extensive experience and training in investigating child abuse cases, the need for a supervisor to check on Berry's investigation to prevent him from failing to investigate exculpatory evidence was not highly predictable or plainly obvious. Cf. Bryson, 627 F.3d at 789 ("We are not persuaded, however, that it was highly predictable or plainly obvious that a forensic chemist would decide to falsify test reports and conceal evidence if she received only nine months of on-the-job training and was not supervised by an individual with a background in forensic science.").

Moreover, although Dr. Lyman sets out the details of what he believes would be a better policy regarding child abuse investigations, he gives no reason to think it would be highly predictable or plainly obvious that not having these policies in place would lead to detectives failing to investigate exculpatory evidence. Plaintiff does not present any evidence that specific, written child abuse investigation policies were ubiquitous in police departments at the time. Cf. id. ("[A]lthough the record reflects that most forensic laboratories began adopting better training and management practices in the 1970s and early 1980s, such practices were by no means universal in 1983, further militating against the conclusion that it was highly predicable or plainly obvious in 1983 that the training and supervision practices employed by the City and other jurisdictions would result in the violation of federal rights."). And considering that failure to investigate exculpatory evidence is not a problem specific to child abuse cases, it is unclear why a specific policy on

investigating exculpatory evidence for this type of case would be obvious. Given the undisputed evidence of Berry's training on the job and at specific child abuse investigation seminars, and plaintiff's failure to show that a written policy on child abuse investigations was obviously necessary at the time to prevent officers from ignoring exculpatory evidence, the Court finds that plaintiff has failed to show deliberate indifference. Because plaintiff has not presented sufficient evidence to support a finding of a custom or policy that caused his constitutional deprivation, defendant's motion for summary judgment will be granted.

**IT IS THEREFORE ORDERED** that Defendant City of Tulsa's Motion for Summary Judgment and Brief in Support (Dkt. # 88) is **granted**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's motions in limine (Dkt. ## 47, 50, 51, 97, 98) and defendant's motions in limine (Dkt. ## 57, 61, 103) are **moot**.

**DATED** this 18th day of April, 2017.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE